My name is Stephanie O'Donnell and I work with the Planned Parenthood to represent the Kamelans in this case, who are referred to as Ms. Fox and her child. The District Court granted summary judgment in this case. I would like to start talking about the state-created danger with the cost of action. The court found no evidence of any kind of state-created danger because the assertion was, and this is what the defendants had argued, was that the father was a child molester. And so therefore, by her, the child, going into his care in custody, they didn't create any danger to her. But, counsel, there were charges on both sides. And if I can ask you, sweetheart, how many of the charges were ever substantiated on either side, as far as I can tell? And so I really have difficulty with your position. To be candid with you, it seems completely frivolous to me. Well, the arguments that the mother was not a fit mother or was not in custody were based on her having been supposedly having made false allegations of molesting. The problem is, those were not false allegations. I don't, on this record, let me, I'll open it up to whoever's question and see if you can address it. You surely are contending that the judge who awarded custody created a state danger, are you? No, the judge was simply doing what judges do, looking at the evidence. Okay, so the judge did not create the danger. How did the people that you sued in this case create the danger? Don't make any allegations with respect to the father for a moment. How did they create the danger? They created the danger because they sent in motion and they set the stage for the child being in sole physical custody. Well, the judge awarded custody, at least partial custody to the father. Correct. Absolutely. And the child was therefore going to be in the custody of the father because of the judge's order, correct? That's correct. So tell me again how, and that was what, in your view, whether or not the record bears it out as a separate issue, created the danger for the child being in the custody of the father. Right. So tell me how the various other defendants created that danger when it existed as a result of the judge's custody order. It existed as a result of the judge's custody order because the judge did not have the evidence before him. So your theory is, let me just work this through, your theory is had these various defendants done whatever you think they should have done, they would have reported their findings to the judge who would have taken custody away from the father. I think that's simplifying it a little bit too much. Well, that's got to be your theory because otherwise the father would have retained custody, wouldn't he not? The theory is, okay, I want to explain. Answer my question for a second. Doesn't your theory depend on the notion that had these other people taken whatever action you think was appropriate, the judge would have removed custody from the father? Yes. I apologize for one second. In part, the danger was not necessarily the father. Certainly the father having shared custody was a problem. The real danger was that as a result of the actions and inactions of the defendants, the father not only had shared custody, he had sole physical custody. Mother had supervised visitation. Let's just go back for a second. By virtue of what did the father have sole physical custody? By virtue of a court order that was made based on a mediation. Okay. You're with me. I just want to make sure. This may or may not be fatal to your case, but I want to focus on this. Your argument depends on the notion that had these folks done what you thought they should have done, the court would not have allowed the father access to the child. Well, certainly the court would not have allowed the father sole physical custody. Would the father have had access? Likely not. Likely the father would have had supervised visitation. So the answer to my question is yes, is it not? Yes. Your case depends on the theory that if these folks had acted the way you think they should have, a judge would have also acted differently. A judge would have acted differently? Yes, absolutely. Given that, was the danger created by the judge's order if these folks simply failed to mitigate the danger caused by the judge's order? I disagree, and here's why, Your Honor. Because at the time before the judge's order granted sole physical custody to father and supervised to mother, the custody was equally okay. And she was three years old. She was very young. And at this time, she started claiming that dad had molested her. There's no evidence, though, of such molestation as far as I can tell. Other than there's certainly no physical evidence. Well, there often is some physical evidence, especially with a three-year-old. The side of the matter is the therapist has a declaration which said that this child, in her opinion, is the child's therapist, was, in fact, molested by the father. And the molest took place during the time, as she understands it, as she believes from having interviewed a therapist for this child during the time that father had custody. But you still haven't answered my question. My question is how did these various other people create danger? Because all of this occurred because the court allowed the father to have sole physical custody from time to time of the child. Thank you. So how did the other folks create the danger? They may have failed to stop it, but have they created it? I will explain that. Here's the thing. There's a mediator for the court, and that mediator spoke with some of the defendants. Okay? We'll call them the social worker defendants. Sotom and Kletyshev, our custodian, spoke with these people, and these people did not disclose DUIs. They did not disclose that there had been child pornography found on the father's computer. Instead, what they said is they would not be opposed to mother losing visitation because mother had been making false allegations, which is so important. How does that create a danger to the child? It creates. I'm asking a very basic question. Didn't the danger to the child exist by virtue of the judge's order allowing father sole physical custody? They may have failed to solve the problem. They may have let it go on for a longer period of time than it should have gone on. Assuming there was a public vote, how did they create the danger? Because that problem did not exist prior to the defendant's involvement. The situation in which the father had sole physical custody did not exist prior to defendant's involvement in this case. And so, had they done what they, not only what they should have done. You're all right. The allegations and the evidence, and this is something a jury can decide. Listen, if a jury comes back and says, you know, these people did the best they could. You know, they had incomplete evidence. They're busy, et cetera. Okay. Then we lose the case. But the fact is, they acted in a way that was not only, it wasn't negligent. It was absolutely designed to have father have physical custody of this child. How could a social worker say, I'm doing my job and I'm not taking any kind of sides here. How can a social worker say, I'm doing my job when I don't report child pornography? She knew that there was child pornography. Well, child pornography does not equal child molestation. It's something that the media might believe. I apologize. The question was going to, well, I forgot. It's a risk factor. Wasn't it reported to the media? No. Why did it end up in this report then? I'm sorry. How did it end up in the mediators? The mediators report that was provided to the judge. Well, here's the thing. This case was not. It was not. I didn't let a judge know that there was child pornography. No. It was in the mediators report, was it not? No. No. Okay. Mediators report. I'm looking at it. It is 2773. Okay. This is the mediators report. It is dated April 17, 2009. No mention of child pornography. What it says is, according to Child Welfare Services, the mother continues to take the child to doctors, and the hospital alleges sexual molest by the father. Child Welfare Services claimed that they received the same calls over and over again alleging father had sexually molested the child. They said the calls are currently coming from other professional people who the mother informs that the child claims the father touched her inappropriately. That is false. There was a report by the therapist who said the child said that in session, not with the mother there, and it wasn't the mother reporting. It says in this mediators report, it says the social worker stated that the mother uses the system in an effort to get other professionals to make referrals to Child Welfare Services. No mention in here about, by the way, the mention in here from about child pornography on page, it's page three of the report, under law enforcement, it says the allegations have been proven to be untrue. He stated the father does not have a computer in this home. Well, no, I think it was taken because it had child pornography on it. So not only do we not mention the child pornography, we say he doesn't even have a computer. How, that is completely and utterly false. So the question, it begs the question, which is a jury question, why? Why are you reporting false information? Why are you preventing mother from getting information she is deserving? If there were no further questions, I would like to reserve four minutes and nine seconds. Thank you. Good morning. I would like to speak on behalf of the defendants and the police. Leticia Castaneda, Erica Soto, and Ron Castaneda. I would first of all like to address the arguments the counsel was just and the evidence of pornography on the computer. In the Beth Wallace report of October 9th, 2008, it indicates that Mr. Rogers himself advised the family court mediator about the allegations of pornography on his computer. And what's the year on it? I'm sorry, I don't have the reference date. I was going to. I know it was there some way, so I didn't find it. The date of the report is October 9th, 2008. Wallace also contacted Detective Lee, who was the officer who did the investigation, and she contacted the district attorney's office. She had a candid conversation with the district attorney, who was the one who said there was insufficient evidence to press charges with regard to the pornography. It was Wallace's recommendation, despite the fact that she knew that Mr. Rogers had told her about the finding of the pornography on his computer. It was her recommendation that Mr. Rogers' custody be reinstated, that the child be reinstated with Mr. Rogers. It was following that report, as well as the other report by a marriage, excuse me, a licensed marriage and family therapist dated October 16th, 2008, which was Janet Hensinger. She was hoping that the parents would be able to resolve their animosity towards each other. It was very obvious that these two had hidden agendas against each other. She wanted them to resolve their animosity. As an outsider reading all this, it looks to me like these two people just contested each other, and there were charges and countercharges that the defendants were facing with resolving. And two, from my perspective, pretty unattractive candidates for a parent. And I'm not sure where there's a federal claim in here, to be honest. I mean, I know you're talking about the appropriateness of what they did and qualified immunity and all of that, but it just doesn't seem like a federal case to me. Quite frankly, I would agree, Your Honor, because as the defendants in this case, again, with regard to their constitutional claim, the one where plaintiffs are alleging that they have a constitutional right to liberty of interest to the custody of their child, they cite to the case of Britton v. Hansen. In Britton v. Hansen, the court discussed the deprivation of the parent's liberty of interest with regard to the custody of its child, and it held that it didn't rise to the level of a constitutional violation. The court stated that in allowing a substantive due process claim based on an alleged deprivation of any liberty of interest in the custody of a child would interchange federal courts and federal law into areas that are restricted to be held to be the province of the state. One of opposing counsel's arguments, though, is that there was evidence that molestation actually occurred and that this was hidden by conspiracy among the defendants and that that would constitute a different kind of harm than a custodial harm. What is your response to that argument? It is. Our position is that, in fact, there was no evidence of molestation. There were two hard interviews conducted at the minor. She never discussed during those hard interviews, and, in fact, at one point she said that her dad did touch her, but when she was further questioned about why her dad touched her private parts, she said it was because of her acute kind of medicine. Mother, there was some evidence, whether or not it was profane. She said it was an issue of the mother's sitting with the child, and it said so. I guess at least in one of those interviews, the child reported something. The issue before us is whether or not somebody should have believed that. What happened with those accusations? Were they passed on to the mediator in the court? Those accusations were documented, thoroughly documented. It was called the screener narratives. In the investigation reports by the station workers, they would go out and interview these people and document them. It was in the CWS file. It wasn't the social workers who were charged with the investigation to determine whether or not the court should order testing to one parent or the other. It was the family court services mediator who was charged with that. The family court services mediator then contacted CWS, requested the file. At one point, in continuing her investigation, she told CWS, we already have this information. So let me ask the question slightly differently. Let's assume, just for purpose of discussion, that CWS conducted an inadequate investigation. What allegations did it resolve, or what evidence did it have that it was offered from the court of the mediator? There's no evidence that they withholded any information. So there was, as you pointed out, the child pornography issue was brought to the mediator. The allegations of all this issue were brought to the mediator. Perhaps these folks didn't investigate it appropriately, or perhaps they even got together and said, oh, no, I want to investigate this. But the court knew about the allegations and whatever evidence there was. Yes, they did. And there was discussion in the hearings, in some of the later hearings, there was discussion about, you know, if there is, in fact, pornography found on this computer, we potentially have a problem. There's certain scans where we've either got mom doing something terribly wrong, or we've got dad doing something potentially criminal. But we needed to look into that more. When the pornography was disclosed to the Social Services, it was disclosed by detective Lee to the social worker, and then he requested, and it's documented in the screener narratives, he requested that the social workers basically stand down on their investigation. They didn't want the social workers going and conducting some additional interviews with family members. Because they were conducting their own separate, independent investigations to determine if there was sufficient evidence to present to the district attorney's office to potentially file charges. So once we learned that there was pornography found on the computer, we sat back and waited for the detectives to come back and tell us, all right, what are your findings? But in the meantime, it's in the Child Welfare Services record, as is evidence of DUIs on both parts. There's an issue with regard to the DUIs, and the court even acknowledged in one of the family court hearings that there is a problem with DUIs going on both sides. So whether or not one was a drug and a child molester, or whether or not one was causing harm to her daughter, we're continuously reporting to people, knowing full well that it was going to result in a suspected child abuse report. It's going to subject their child to further investigation, interview, potential removal from the home. The plaintiff was unable to prevent herself from doing this. Like you said, there was a lot of animosity. It's very apparent between the two of them. It's almost as if the plaintiff, neither one of them could help themselves. But we have issues with regard to credibility, and what are we going to do to best protect the child, which is also why at one point the court decided to appoint an attorney for the child. So all along we're dealing with this quagmire of issues, but coming back to the case that is currently before the federal court, the district court has found that there was no constitutional violation. The district court found that, as in DeShady, Dad had custody of Sierra prior to the rape report. The social workers, none of the social workers, none of law enforcement, none of the attorneys, none of these defendants did anything that increased any potential danger in that home that existed when Ms. Fox made those first initial allegations of molesting. Nothing changed. Nothing increased. These people did not create a danger. They did not otherwise exist. Are you intending to share time with the jury? Yes. He's about to stop. He forcibly picked you for the argument. I'm Michael Woods. I represent the County of Tulare and the attorney defendants who had unfortunately closed together with all the defendants in this case. And I want to just break out a few dates for you because it's dispositive of the state-created danger, the causation issues on qualified immunity that we know. May 12, 2009, Judge Shirk moved the primary physical custody to the father. July 22, 2009, Judge Shirk eliminated the mother's right to have unsupervised visits. The Deputy County Counsel's involvement, their first involvement was December 3, 2008. That involvement was a request by the social workers to Attorney Helding, do we have grounds to remove the minor from the mother? The attorney said no, thereby facilitating the mother's continued physical custody. On July 15, 2009, the attorneys were consulted again, even though the father had already been awarded primary physical custody,  Again, the social workers were concerned whether the mother was emotionally abusing the minor, justifying the immediate removal from her. Again, the County Counsel said no, you don't have sufficient facts, thereby again allowing the mother to continue custody. So, the County Counsel was not involved at any time before a judge made a decision to remove physical custody from the minor. Are there any other factual allegations in this case as to the County Counsel? I mean, I understand it's an allegation that they conspired with everyone, but in terms of their inactions, are there any other allegations? Only later is it alleged that the County Counsel, by making objections and blocking the production of records, that that somehow facilitated and aided the conspiracy to deprive the mother of physical custody. Are the records, is the contention about blocking records solely with respect to access to the hard drive or whatsoever? No, it's that the attorneys objected to 827 and 828 requests made in the family law proceeding, which in almost every case, those objections were sustained by the court. Eventually, Judge Zilvera thought that it might be helpful to the attorney handling the custody issues to see those matters. It went back to the Commissioner Wittig. She said if the family law judge believes it's relevant, then they can look at them. Can I ask a question differently? Are there any allegations other than this allegation of not making a hard drive available and deal with the actions of attorneys outside the court? No, I don't believe so. And once you have those dates in mind, I won't spend time on the state-created danger because the court is the Dressman. We always thought qualified immunity disclosed in this case without even determining there was no constitutional right to a specific amount of custody that we believed to be the case. But the debate that we've had, I think it's clear that it eludes right to a certain amount of custody when the best interest of the child's standard is employed, does not give rise to a constitutional right, and if it did, it certainly wasn't clearly established as evidenced by the district court judge's determination that there was no constitutional right. The extensive briefing here trying to establish there was a constitutional right, there's simply no evidence that the attorneys should have known that their objections would have deprived other of some constitutional right to custody. It is simply not there. And the individual attorneys haven't even been provided the individual analysis. Look at John Rosen. He isn't even mentioned in the brief. Each of these arguments has to be applied to each of these attorneys. And finally, on behalf of the county, there is no monel theory because there isn't any custom practice or policy to refuse to sleep with the court. Would Jim have... May I interrupt you there, sir? In the complaint, is there a 1983 action against the county? There is. The child court that is followed when they say that the 1983 action escapes all defenses except Rogers and the county. If the court said that there was a second cause of action against the county only, a policy and practice ignoring claims brought by parents based on discrimination against protected parents who are constantly assumed or automatically assumed to be making false allegations, that is a cause of action. Your position is that there's nothing in the records to substantiate that? Well, of course, the CWS has specific policies requiring a thorough investigation. The county council had policies regarding its procedures to suggest that there was a policy or practice to favor a mother against a father. There's no factual evidence. Or to suggest that there's a policy or practice not to investigate. There's no factual evidence. Or to suggest there was a policy and practice for a deputy county council to mislead the court on custody matters. The county council did not make any recommendations on custody. There's no communications with the mediator. There's no communications with the judge on custody. They simply weren't involved. All they were doing was doing their job advising their clients. Thank you, counsel. Ms. Finnelli, you have some rebuttal time. Thank you. With respect to the issue of evidence regarding the council defendants, I would point the court to the deposition of James Christensen that was offered as evidence in support of the opposition to the summary judgment. Mr. Christensen represented Pamela Fox in her family law case. And he was, he testified in his deposition that at one point during a, in M. Chambers' discussion with the family law judge, which is common, that Ms. Finnelli represented to the court that there was a child pornography, that those images that were found on the computer were adults dressed up like children. So here is evidence right here of a misrepresentation to the court regarding what was found on the computer. Once again, it begs the question, why? Why would she not just be forthcoming and say, yes, there was child pornography? It has been thrown around that the court was aware of the allegations of child pornography. That is a huge distinction, I would like to make. The court was never aware that child pornography was found. The court may have been aware that there were allegations. And, in fact, there are some statements in the, I saw in the respondent's brief, that Pamela Fox knew that there was child pornography. Well, how did she know? I mean, some kind of hearsay statement? How is that admissible? And the point is, it's not. The point is, any time she tried to get admissible evidence of this, she was stonewalled, and she was stonewalled by all of the defendants, including the attorney defendants, who were the ones who were in charge of posing her requests. I also would like to point out, with respect to the evidence that the county, the county itself, that the social workers did not do, it's not that they didn't do their job. It's that they intentionally, based on the record, they intentionally set out to conceal evidence that would have been helpful to the family law judge, which the judge later said, I would have loved to have known about the child pornography. Is that evidence of molest? It's certainly something that is relevant to molest under all of the law, under all of the statutes. Certainly, it supports the idea. What does the record show about why there was no prosecution of the father? Well, you know what? The record is not overly clear about that, but I will submit to this court, as it knows, there's a huge, huge difference in standard between, we're going to prosecute somebody for a crime beyond a reasonable doubt, and, hey, here's some evidence of child pornography. My understanding from the record is that Mr. Rogers said, oh, well, you know, I wasn't doing that for my self-gratification. You know, I was investigating because some anonymous person on some unknown date called me up and said, I think that your ex is taking pictures and putting them on the Internet. Okay, that's really not that credible. But perhaps that's why the court said, well, maybe, or not the court, the prosecutor said, I don't know that we can prove the case beyond a reasonable doubt because maybe a jury will believe him. Okay, but that is a huge difference between maybe he was telling the truth and the jury in this case can determine that. Well, but the question that you're raising is whether or not the social workers, for example, when we start with the premise that I'm not sure there's a constitutional right, but you're starting with the premise that this evidence demonstrates that there was a massive conspiracy to mislead the court. I mean, if you look at what Judge Weber said, why isn't it also reasonable to think that the social workers and the county attorney looked at this and said there's nothing worth prosecuting here? Why is it evidence that there was a conspiracy? It's evidence because there is an inference, Your Honor. The thing is, on summary judgment, we are entitled to all reasonable inferences, and it's inferable that there was no conspiracy and inferable that there was. And with that, it looks like my time is up. It is. And must the court ask no further questions? I wanted to address the issue of the, and I apologize for going over, but the issue of whether there's a constitutional right to custody, and I think here it's a constitutional right to have a fair trial. The lack of a constitutional right to a certain physical custody order presumes there was a fair and unbiased trial where there was due process involved,  Thank you, counsel. Thank you. I appreciate it. That case just argued is submitted, and we will
judges: Graber, Hurwitz, Foote